**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| QUANTUM TECHNOLOGY INNOVATIONS, LLC<br><br>          Plaintiff,<br><br>     v.<br><br>VALVE CORPORATION,<br>GEARBOX SOFTWARE, LLC<br>          Defendants | Civil Action No. 2:23-cv-425-JRG-RSP |

**DEFENDANT VALVE CORPORATION'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3) FOR IMPROPER VENUE</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND...........................................................................................1

    A. Valve Does Not Control Day-to-Day Operations of PC Cafés.............................2

    B. Valve's Prior Work and Current Relationship with Co-Defendant Gearbox Software ...................................................................................................3

III. LEGAL STANDARDS ...................................................................................................4

IV. ARGUMENT...................................................................................................................5

    A. Venue Is Improper in the Eastern District of Texas Because Valve Has No Physical Place in This District .........................................................................5

        1. Valve Has No Office Space, Real Property, or Employees in This District ........................................................................................5

        2. PC Cafés Are Not Physical Places of Valve in the District.......................6

        3. Gearbox's Physical Place in this District Cannot be Imputed to Valve. ...........................................................................................................9

    B. The Court Should Disregard Quantum's Remaining Irrelevant Venue Allegations ............................................................................................................12

        1. Valve's Texas Taxpayer Number Is Irrelevant to the Venue Analysis......................................................................................................12

        2. Neither Valve's Intervention in a 2013 Lawsuit nor Its Consent to Venue in a 2015 Lawsuit Confer Venue in 2023................................12

        3. Valve's Sale of Gift Cards in This District Is Irrelevant to the Venue Analysis ........................................................................................14

    C. The Court Should Dismiss the Case ....................................................................15

V. CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akurate Dynamics, LLC v. Carlisle Luid Tech., Inc.*,
 No. 6:20-cv-00606-ADA, 2021 WL 860006 (W.D. Tex. Mar. 8, 2021)..................15

*Alexsam, Inc. v. Simon Prop. Grp. (Texas), L.P.*,
 No. 2:19-CV-00331-JRG, 2021 WL 8441707 (E.D. Tex. Sept. 3, 2021) ...............15

*AptusTech LLC v. Trimfoot Co., LLC*,
 No. 4:19-cv-00133-ALM, 2020 WL 1190070 (E.D. Tex. Mar. 12, 2020)...............4

*In re Cordis Corp.*,
 769 F.2d 733 (Fed. Cir. 1985).................................................................................5

*In re Cray Inc.*,
 871 F.3d 1355 (Fed. Cir. 2017)......................................................................5, 6, 9

*Display Technologies, LLC v. Nvida Corp.*,
 No. 2:15-cv-00998-JRG-RSP, Dkt. 41 ..................................................................13

*Koss Corp. v. Skullcandy, Inc.*,
 No. 6:20-cv-00664-ADA, 2021 WL 1226775 (W.D. Tex. Mar. 31, 2021)............15

*In re Micron Tech., Inc.*,
 875 F.3d 1091 (Fed. Cir. 2017)…) ........................................................................14

*Optic153 LLC v. ThorLabs, Inc.*,
 No. 6:19-cv-0067-ADA, 2020 WL 3403076 (W.D. Tex. Jun. 19, 2020)...............15

*Symbology v. Valve Corp. and Gearbox Software, LLC*,
 Case No. 23-419, Dkt. 45-1 (E.D. Tex. Feb. 28, 2024).......................................1, 2

*TC Heartland LLC v. Kraft Food Grp. Brands LLC*,
 581 U.S. 258 (2017).....................................................................................4, 12, 14

*Toshiba Int'l Corp. v. Fritz*,
 993 F. Supp. 571 (S.D. Tex. 1998) ........................................................................13

*Uniloc USA, Inc. v. Nutanix, Inc.*,
 No. 2:17-CV-00174-JRG, 2017 WL 11527109 (E.D. Tex. Dec. 6, 2017) .............15

*Uniloc v. Activision Blizzard, Inc.*,
 No. 6:13-cv-00256-LED, Dkt. 1 ......................................................................12, 13

*Unity Opto Tech. Co. v. Lowe's Home Centers, LLC*,
   No. 18-cv-27-JDP, 2018 WL 2087250 (W.D. Wis. May 4, 2018)....................10, 11

*V&A Collection, LLC v. Guzzini Props. Ltd.*,
   46 F.4th 127 (2d Cir. 2022) .......................................................................13, 14

*In re Volkswagen Grp. of Am., Inc.*,
   28 F.4th 1203 (Fed. Cir. 2022) .................................................................. *passim*

*Westport Fuel Sys. Canada, Inc. v. Nissan N. Am., Inc.*,
   No. 2:21-cv-00455-JRG-RSP, 2022 WL 4594036 (E.D. Tex. Sept. 12, 2022).........8

*Wireless Protocol Innovations, Inc. v. TCT Mobile (US) Inc.*,
   No. 6:15-cv-918-KNM, 2023 WL 4626659 (E.D. Tex. July 19, 2023) ...............7, 9

**Statutes**

28 U.S.C. § 1400(b) .......................................................................................4, 5, 6, 14

**Other Authorities**

Fed. R. Civ. P. 12(b)(3).........................................................................................1, 15

Fed. R. Civ. P. 12(g)(2)...........................................................................................14

Fed. R. Civ. P. 12(h)(1)(A)......................................................................................14

I.  **INTRODUCTION**

In September 2023, Quantum Technology Innovations, LLC's ("Quantum") filed its original complaint. Dkt. 1. Now more than six months later, after the parties have completed venue discovery, Quantum filed its First Amended Complaint ("FAC") (Dkt. 23). The FAC does nothing to fix the fatal defect in Quantum's original complaint (Dkt. 1): there is no legal basis for finding venue is proper in this District over Valve.

Valve has no meaningful connection to this District. Neither party disputes that Valve is incorporated and headquartered in Washington and does not have a regular and established place of business in this District. Valve does not own any office space, operate any stores, lease any storage space, or have any physical presence in the Eastern District of Texas. Nor does Valve have any employees in this District. This should end the inquiry.

In an attempt to manufacture a connection to the Eastern District of Texas where none exists, Quantum alleges a series of irrelevant and misleading facts. More importantly, venue discovery was closed when Quantum filed its FAC, and Quantum's venue allegations are specifically contradicted by Valve's documents and testimony. Accordingly, Valve respectfully moves under Rule 12(b)(3) to dismiss for improper venue.

II.  **FACTUAL BACKGROUND**

As Quantum admits, Valve is incorporated and has its principal place of business in Washington. Dkt. 23, ¶ 2. Valve does not own any real property, rent any office space, or possess or control any "shelf space" in the Eastern District of Texas. *See* Decl. of Christopher Schenck ("Schenck Decl.")[1], ¶ 6. Nor did Quantum identify any physical presence of Valve in its FAC.

---

[1] Mr. Schenck's declaration was originally filed in support of Valve's motion to dismiss the Plaintiff's Second Amended Complaint in related case *Symbology v. Valve Corp. and Gearbox Software, LLC*, Case No. 23-419, Dkt. 45-1 (E.D. Tex. Feb. 28, 2024). The two cases are

1

A. **Valve Does Not Control Day-to-Day Operations of PC Cafés**

Quantum attempts to tie Valve to independent third-party gaming lounges in this District that purchased commercial licenses to provide games from Valve's "Steam" platform to customers. Dkt. 23, ¶ 12. These third-party gaming lounges are generally called PC Cafés.

An individual subscriber to Valve's Steam platform can purchase single player licenses to games available on Steam, allowing that subscriber, and only that subscriber, to play their chosen game on their account. In contrast, under the PC Café program, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, Ex. 1 (PC Café Agreement), § 2(A)(2); Ex. 2, § 2(A)(2). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, Ex. 1; Ex. 2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The PC Café Agreement does not give Valve any control over the operation of the PC Cafés. Valve only provides a license to the digital content that is purchased by the Cafés to provide for their patrons. The PC Café, not Valve, is responsible for providing the physical premises. *See* Ex. 1 at 1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. 2 at 1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

consolidated for purposes of venue discovery (*Id*. at Dkt. 24), and the venue allegations addressed in Mr. Schenck's declaration are also at issue here. Accordingly, Valve has attached Mr. Schenck's previously filed declaration to the present motion for the Court's convenience.

███████████████████████████████████████████████████████

███ Ex. 1, § 4A ███████████████████████████████████████

█████████ § 4C ████████████████████████████████████████

███████ § 4D ██████████████████████████████████████████

████████████████████████████████████ Ex. 2, §§ 4A; 4C; 4D. ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ (Ex. 1, §§ 2(C), 5; Ex. 2, §§ 2(C), 5), ███

███████████████████████████████████████████████████████

████████████████████ Schenck Decl., ¶¶ 7-8.

**B.     Valve's Prior Work and Current Relationship with Co-Defendant Gearbox Software**

Quantum also attempts to bootstrap allegations relating only to co-defendant Gearbox Software LLC ("Gearbox") to Valve. *See, e.g.*, Dkt. 23, ¶ 7. But Valve is not related to Gearbox and does not exercise control over Gearbox. Schenck Decl., ¶ 14. In 2001, after Gearbox developed two expansions to Valve's popular "Half-Life" video game franchise, Valve entered into a contractual agreement with Gearbox to do additional video game development work. *Id.*, ¶¶ 15-17. In 2002, Valve terminated that contract. *Id.*, ¶ 18. In the more than two decades that have passed since then, Valve has not collaborated with Gearbox to develop any products—including Tiny Tina's Wonderlands, which was released in June of 2022. The public information that Quantum cites in its complaint lists Gearbox Software as the game's sole developer and "2K" as the game's publisher. Dkt. 23, ¶ 5 (figure one). It is ████████████████

███████████████████████████████████████████████████████

████████████████ Ex. 6 (Venue 30(b)(6) Dep. Tr., 37:15-38:8). Despite its recent release

3

date, Quantum references Tiny Tina's Wonderlands in its FAC as being released at the **start** of Valve and Gearbox's collaboration (an allegation which cannot be true given the twenty-year time difference). Dkt 23, ¶ 5 (figure depicting Tiny Tina's Wonderland); *id.* ¶ 8; *see also* Schenck Decl., ¶¶ 19-21. More particularly, Valve and Gearbox did not work together to develop the Steam gaming platform that Quantum accuses of infringement. *Id.* ¶ 22.

The only existing relationship between Gearbox and Valve as of the time of the original complaint (and the FAC) is that Gearbox is one of the thousands of game developers that distribute their products on Valve's Steam platform. Schenck Decl., ¶ 22. In ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 2.1-2.2; 11.2. The agreement also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 6. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 3.5. Further, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 15.7.

### III.  LEGAL STANDARDS

Quantum "bears the burden of establishing proper venue." *AptusTech LLC v. Trimfoot Co., LLC*, No. 4:19-cv-00133-ALM, 2020 WL 1190070, at *1 (E.D. Tex. Mar. 12, 2020) (*quoting In re ZTE (USA), Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018)). Because Valve is incorporated in the United States, 28 U.S.C. § 1400(b) is the "sole and exclusive" provision controlling venue. *TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 581 U.S. 258, 265-66

4

(2017). Under Section 1400(b), Quantum can only establish venue in a district where a corporate defendant "resides" (i.e., is incorporated) or "where the defendant has committed acts of infringement[2] and has a regular and established place of business." *Id*.

To find that Valve has a regular and established place of business, "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc*., 871 F.3d 1355, 1360 (Fed. Cir. 2017). "[V]enue is improper under § 1400(b)" if just one of these three requirements is missing. *Id*.

To establish that Valve has a "regular and established place of business" in this District, "[r]elevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *Id*. at 1363.

## IV. ARGUMENT

Neither party disputes that Valve is incorporated in Washington state and does not "reside" in Texas. Thus, to demonstrate that venue is proper, Quantum must show that Valve has a physical place in this District and that the place is a "regular and established place of business." *In re Cray*, 871 F.3d at 1360. Quantum does not plausibly allege facts to meet this burden.

### A. Venue Is Improper in the Eastern District of Texas Because Valve Has No Physical Place in This District

#### 1. Valve Has No Office Space, Real Property, or Employees in This District

Quantum does not allege that Valve owns or leases any real property or maintains any office space in the Eastern District of Texas. Quantum does not allege that Valve operates any stores, warehouses, or fulfillment centers to sell its products. Indeed, it cannot, as Valve does not

---

[2] "The issue of infringement is not reached on the merits in considering venue requirements." *In re Cordis Corp*., 769 F.2d 733, 737 (Fed. Cir. 1985) (citation omitted). Accordingly, Valve does not address the sufficiency of the infringement allegations made in the FAC for the purposes of this Motion. For the avoidance of doubt, Valve denies all allegations of patent infringement.

5

have any physical presence here, let alone a presence that could be considered "a regular and established place of business." Schenck Decl., ¶¶ 5-6. Quantum does not allege that Valve has any employees in this district and, indeed, it does not. Accordingly, neither prong of 28 U.S.C. §1400(b) is satisfied, and venue is improper. *In re Cray Inc.*, 871 F.3d at 1360.

### 2. PC Cafés Are Not Physical Places of Valve in the District

Instead of identifying a physical place of Valve in the District, Quantum relies on third-party PC Cafés in this District who have purchased commercial licenses to Valve's videogames. Dkt. 23, ¶ 12. Quantum's threadbare allegations fail to clear the Federal Circuit's high bar for imputing the contacts of third parties to Valve.

When determining whether to impute the contacts of a third-party to Valve for the purposes of venue, "the most significant factor to consider is the degree of control that [Valve] maintains over the daily operations of the [third party] . . . ." *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1210 (Fed. Cir. 2022) (citation omitted). The control must be so expansive and fulsome to amount to an "agency relationship [where] the 'principle ha[s] the right throughout the duration of the relationship to control the agent's acts.'" *Id.* (citation omitted). Merely setting standards and providing constraints is insufficient to rise to an agency relationship and impute the contracts of a third party to Valve. *Id.* at 1210.

For example, in *In re Volkswagen,* the Federal Circuit determined the defendant car manufacturers did not have control over car dealerships who sold defendants' products, despite contractual provisions mandating the dealerships "(1) employ certain types of employees, . . . ; (2) maintain a minimum amount of inventory; (3) perform warranty work on consumer vehicles; (4) use specified tools . . . ; (5) use distributor-approved computer hardware and software; (6) comply with the distributors' standards regarding dealership appearance . . . ; (7) comply with the distributors' working capital requirements; and (8) attend mandatory training sessions . . . ." *Id*. at

6

1211. Instead, the eight contractual obligations placed on the dealerships by the manufacturers were merely found to be constraints and standards and did not amount to "step-by-step instructions" on how the car dealerships were to run their business. *Id.* at 1211-12.

This Court has also found relationships between defendants and third parties to lack the high level of control necessary to impute the contacts of the third-party to the defendant even when the defendant "provided detailed instructions to [third-party] employees tasked with inspecting the products and making them commercial ready; supervised and reviewed issues with the supply chain; [] worked with [third-party] to improve processes," and "was able to access [third-party] facilities to review [third-party] processes and work." *Wireless Protocol Innovations, Inc. v. TCT Mobile (US) Inc.*, No. 6:15-cv-918-KNM, 2023 WL 4626659, at *11 (E.D. Tex. July 19, 2023). The Court explained that "adherence to quality control standards set out by [defendant] is insufficient to establish that [defendant] had the requisite interim control over [third-party] or [their] employees necessary to create an agency relationship." *Id.* at *12.

Like in *In re Volkswagen* and *Wireless Protocol*, the PC Cafés operate independently of Valve. Valve has no agency relationship with the PC Cafés such that Valve can control their day-to-day operations. When a PC Café operator signs the agreement,[3] Valve plays no role in the setup, maintenance, or daily operation of the PC Cafés. Valve employees are not physically present at PC Cafés, nor do they assist in supervising, operating, or maintaining the day-to-day (or any) operations of PC Cafés. Ex. 1 ■■■■■■■■■■■■■■■■■■■■■■■■

---

[3] ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ Ex. 4 (Steam Subscriber Agreement). Quantum has not alleged that every user acts as an agent of Valve for purpose of venue. Nor could it because the Steam Subscriber Agreement does not give Valve day-to-day control over each player's use of the Steam platform but merely sets forth constraints, such as prohibiting cheating or tampering (Ex. 4, § 4).

7

███████████████████████████████████████████████████████ Ex. 2 at 1;

Schenck Decl., ¶ 7. The PC Café Agreement makes clear that ██████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████ Ex. 1 at §§ 4A; 4D; Ex. 2 at §§ 4A; 4D. Valve's involvement is limited to providing a license to the digital content that the PC Café operator purchases through their floating licenses.

Under the PC Café Agreement, Valve merely ████████████████████████████████

███████████████████████████████████████████████████. For example, Valve

████████████████████████████████████████████████████████████████████████████

██████████ Ex. 1 at 2(C); Ex. 2 at 2(C). But these mere "constraints on the service provider" are insufficient to rise to the level of the "right to give instructions" or have control over daily operations. *See In re Volkswagen*, 28 F.4th at 1209-10 (citation omitted).

Quantum makes much out of the fact that the PC Café Agreement also allows Valve to inspect PC Cafés to ensure compliance with the Agreement. Dkt. 23, ¶ 12. ██████████████

████████████████████████████████████████ Schenck Decl., ¶ 8. Moreover, a right to inspect does not rise to the level of day-to-day control sufficient to convert the PC Café to a regular an established place of Valve. *See, e.g.*, *Westport Fuel Sys. Canada, Inc. v. Nissan N. Am., Inc.*, No. 2:21-cv-00455-JRG-RSP, 2022 WL 4594036, at *3 (E.D. Tex. Sept. 12, 2022), *report and recommendation adopted*, 2022 WL 4594018 (E.D. Tex. Sept. 28, 2022), *and* 2022 WL 18861036 (E.D. Tex. Sept. 30, 2022) (finding that defendant's employees visiting dealerships at least 44 times and 32 times is not "steady, uniform, orderly, and methodical" nor

8

"something more than 'sporadic'" and does not convert the dealership into a regular and established place of defendant (citing *In re Cray*, 871 F.3d at 1362)).

At all times, PC Cafés are independently created, owned, and operated by third parties. Valve's licensing of digital content to these entities with certain restrictions and standards, without more, is insufficient to impute the contacts of PC Cafés to Valve. *Wireless Protocol*, 2023 WL 4626659 at *11. Therefore, PC Cafés located in this District cannot be a regular and established place of Valve.

### 3. Gearbox's Physical Place in this District Cannot be Imputed to Valve

Quantum uses Gearbox in a transparent attempt to manufacture venue against Valve by imputing Gearbox's contacts with this District to Valve. This is legally insufficient to find venue over Valve in this District. *See In re Cray Inc.*, 871 F.3d at 1360.

From 2001 to 2002, Gearbox and Valve collaborated to create video game content. Schenck Decl., ¶¶ 19-20. Since the project ended in 2002, Valve and Gearbox have had no further collaboration on the creation of any product. *Id*. ¶ 21. Specifically, Valve and Gearbox have not collaborated on any product that Quantum accuses of infringement. *Id*. ¶ 22. During venue discovery, Quantum received the 2002 termination notice and confirmed with Valve's 30(b)(6) deponent that ███████████████████████████████████████ Ex. 5 (2002 Termination of Product Development Agreement); Ex. 6 (Venue 30(b)(6) Dep. Tr.) at 56:18-25. Despite this, Quantum's FAC alleges that Valve "corroborated [sic: collaborated] with Frisco based Gearbox Software, L.L.C." to develop "Tiny Tina's Wonderlands," a game that Quantum's FAC shows was released in 2022. Dkt. 23, ¶ 5 (figure one); ¶ 8. Quantum's own evidence shows this is not the case. The screenshot of Tiny Tina's included in its FAC lists only "Gearbox Software" as the developer, and 2K as the producer. *Id*. Valve had no involvement in

9

the development of Tiny Tina's Wonderland. Ex. 6 at 56:18-25. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The only relationship between Valve and Gearbox as of the filing of the original complaint and FAC is ▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* The agreement does not provide any ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮ Ex. 3; *see also In re Volkswagen*, 28 F.4th at 1210-11. To the contrary, the agreement makes clear that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. 3, ¶¶ 3.5; 15.7.

Valve and Gearbox are separate entities that do not share any common ownership, employees, or office space. Schenck Decl. ¶ 23. Valve does not have any control or authority over the actions of Gearbox. *Id.* For such reasons, the presence of Gearbox in this District cannot be used to support venue over Valve. *See, e.g., Unity Opto Tech. Co. v. Lowe's Home Centers, LLC*, No. 18-cv-27-JDP, 2018 WL 2087250, at *3 (W.D. Wis. May 4, 2018) ("Because there is no authority for the view that venue is proper as to one corporation simply because that corporation 'works closely' with another corporation that may be sued in that district, [Plaintiff] has failed to meet its burden to show that venue is proper in this district.").

The *Unity* case is instructive as to why Quantum's bare-bones allegations cannot support venue. In *Unity*, the plaintiff alleged that the presence of brick-and-mortar stores owned and operated by defendant Lowe's Home Goods was sufficient to find venue over co-defendant L G Sourcing, which sourced and supplied the products sold in the stores. *Id*. at *2. Plaintiff also

included in its complaint allegations that: (1) the defendants are related companies and have the same corporate parent; (2) that "Lowe's Home Stores 'must work closely with [L G] Sourcing to monitor supply chain . . . and address product quality issues so that its warehouse inventory is continuously stocked;'" and (3) that "L G Sourcing 'inspect[s] and test[s] products manufactured by global vendors before approving them for shipment to Lowe's Home stores in the United States,' using standards from Lowe's Home Centers." *Id*. (alterations in original).

The *Unity* court found that these allegations—which allege a much closer relationship than the one alleged to exist between Gearbox and Valve—were insufficient to confer venue over L G Sourcing. The court explained that the two defendants being "subsidiaries of the same parent company and that they collaborate on matters common to both of them" was "not sufficient to treat [them] as interchangeable for the purpose of determining whether each has a place of business in this district." *Id*.

Quantum's allegations are much more lacking here than in *Unity*. Quantum alleges in a single sentence that Gearbox and Valve collaborated "for years starting with Half-Life, Counter-Strike, Tiny Tina's Wonderlands, and many other offerings, that have continuations of these popular offerings available through present day." Dkt. 23, ¶ 8. As describe above, this allegation is facially incorrect. Even if accurate, mere collaboration is insufficient to treat Gearbox and Valve as interchangeable for the purpose of determining whether Valve has a place of business in this District.[4] Moreover, nothing in the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬ such that Valve "ha[s] the right throughout the duration of the relationship to control [Gearbox's] acts.'" *In re Volkswagen*, 28 F.4th at 1210 (citation omitted).

---

[4] Quantum's argument is analogous to requesting that the Court treat the Dallas Cowboys and the Houston Texans as one entity, solely on the basis that the two teams collaborated on a community engagement project decades ago.

### B. The Court Should Disregard Quantum's Remaining Irrelevant Venue Allegations

Recognizing that it cannot plausibly allege that Valve has any physical place in this District, Quantum turns to a series of legally irrelevant allegations in an attempt to circumvent the Supreme Court's venue requirements. None of these allegations, individually or collectively, support a finding that venue is proper in this District.

#### 1. Valve's Texas Taxpayer Number Is Irrelevant to the Venue Analysis

The fact that Valve has a Texas Franchise Tax Account shows only that Valve conducts business in Texas, not that venue is proper in this District. "The Texas franchise tax is a privilege tax imposed on each taxable entity formed or organized in Texas *or doing business in Texas*." COMPTROLLER.TEXAS.GOV, *Franchise Tax*, https://comptroller.texas.gov/taxes/franchise/ (last visited November 2, 2023) (emphasis added). Every company that does any business in Texas is required by the state to have a Franchise Tax Account and a Texas Taxpayer Number. Under the Supreme Court's ruling in *TC Heartland*, merely conducting business in the state, without more, is insufficient to demonstrate that venue is proper in this District.

#### 2. Neither Valve's Intervention in a 2013 Lawsuit nor Its Consent to Venue in a 2015 Lawsuit Confer Venue in 2023

Valve's strategic approach to venue in two unrelated Texas cases filed more than 8 years ago does not now mean that venue is forever properly found in this District.[5]

In a case Uniloc filed in 2013, Uniloc alleged that Valve's customer (Activision) infringed its patents through sales of products on Valve's Steam platform. *Uniloc v. Activision Blizzard, Inc.*, No. 6:13-cv-00256-LED, Dkt. 1, ¶ 12(c) (E.D. Tex. Mar. 21, 2013). As Quantum

---

[5] Paragraphs 8(b) and 8(c) of Quantum's FAC contain identical allegations as Paragraphs 9 and 10.

12

recognizes in its complaint, when Valve intervened in the 2013 *Uniloc* case to defend its products, Valve specifically stated: "Valve *for the purposes of this litigation only*, consents to venue in this district." *Id.* at Dkt. 154-1 (emphasis added).

Similarly, Valve stated in response to a 2015 lawsuit brought by a different Rothschild-controlled entity, Display Technologies, that "Valve does not dispute, *for the purposes of this action only*, that venue is proper in this judicial district. *Display Technologies, LLC v. Nvida Corp.*, No. 2:15-cv-00998-JRG-RSP, Dkt. 41, ¶ 4 (E.D. Tex. Oct. 28, 2015) (emphasis added).

Nothing about these cases support this District exercising venue over Valve.

Valve's intervention in 2013 is irrelevant to the question of whether venue is proper as to Valve in this case. *See Toshiba Int'l Corp. v. Fritz*, 993 F. Supp. 571, 573 (S.D. Tex. 1998) ("[A]s Fritz points out in his Reply, the Fifth Circuit has held that 'the filing of a counterclaim, cross-claim, or third-party demand does not operate as a waiver of an objection to jurisdiction.'"). Taken to its conclusion, Quantum's allegations amount to arguing that to defend its products against an infringement suit in which it was not named as a defendant, Valve must make the choice to forever waive its challenges to venue in this District. That is simply not the law. *See, e.g.*, *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 132 (2d Cir. 2022) ("With a few exceptions, however, '[a] party's consent to jurisdiction in one case [ ] extends to that case alone. It in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available.'" (alteration in original) (quotation omitted)). Valve's 2013 consent to venue is irrelevant to the question of whether venue is proper in this case.

As with Valve's intervention in the 2013 case, its consent to venue in the 2015 *Display Technologies* case is also insufficient to confer venue now. As discussed above, Valve's consent

13

for the purposes of one case only does not serve to make it forever amenable to venue in this District. *See V&A Collection*, 46 F.4th at 132. Further, Valve's decision not to challenge venue in 2015 cannot be used as a waiver to the present challenge to venue because of intervening change in law in the wake of the Supreme Court's decision in *TC Heartland*. *See, e.g.*, *In re Micron Tech., Inc.*, 875 F.3d 1091, 1096 (Fed. Cir. 2017) ("[T]he Rule 12 waiver question presented here is whether the venue defense was 'available' to Micron in August 2016. We conclude as a matter of law that it was not. The venue objection was not available until the Supreme Court decided *TC Heartland* …); *id.* at 1099-1100 ("The Court thus clearly (if not quite expressly) rejected *V.E. Holding* and concluded that the definition of 'resides' in § 1391(c) does not apply to § 1400(b). That change of law, by severing § 1400(b) from § 1391(c), made available to Micron in this case the objection that it does not come within the meaning of 'resides' for purposes of venue under § 1400(b). That position was not available for the district court to adopt before the Court decided *TC Heartland* … For that reason, the objection was not 'available' under Rule 12(g)(2) when Micron made its motion to dismiss in 2016. Accordingly, contrary to the district court's conclusion, Rule 12(h)(1)(A)'s waiver rule is inapplicable here.").

Therefore, Valve's decisions in 2013 and 2015 not to challenge venue are irrelevant to the question of whether venue is proper in this case.

### 3. Valve's Sale of Gift Cards in This District Is Irrelevant to the Venue Analysis

Simply alleging that Valve sells products in this District is insufficient to prove proper venue over Valve. *See supra* § IV.B.1. In its FAC, Quantum alleges "Valve sells its Gift Cards in this District through prominent brick and mortar retailers including Best Buy, GameStop and Walmart." Dkt. 23, ¶ 8.

This Court has already rejected the sufficiency of allegations such as these. In *Alexsam*, the plaintiff also argued that the Eastern District of Texas was a proper venue for its suit against AMEX because AMEX sold "prepaid, reloadable gift cards" here through vendors such as "Dollar General, CVS, Family Dollar, and Walmart." *Alexsam, Inc. v. Simon Prop. Grp. (Texas), L.P.*, No. 2:19-CV-00331-JRG, 2021 WL 8441707, at *2 (E.D. Tex. Sept. 3, 2021). As this Court explained, "[t]aking Alexsam's argument to its logical end, retailers like CVS would be the 'regular and established place of business' of numerous brands who merely sell products in CVS's retail locations. That is not consistent with current venue law in patent cases." *Id*. (*citing In re Google*, 949 F.3d at 1338, 1345 (Fed. Cir. 2020)). This Court's case law makes clear that the sale of a single unaccused product through a general consumer goods retail store is insufficient to support a finding that venue is proper in this District.

### C. The Court Should Dismiss the Case

The Court should dismiss Quantum's case because it filed in the wrong district. *See Uniloc USA, Inc. v. Nutanix, Inc.*, No. 2:17-CV-00174-JRG, 2017 WL 11527109, at *4-5 (E.D. Tex. Dec. 6, 2017).[6] Quantum has a proper forum for obtaining any alleged relief against Valve: the Western District of Washington. Quantum can simply refile its case there.

### V. CONCLUSION

The evidence shows venue is improper in this District. Accordingly, for the reasons discussed herein, Valve respectfully requests the Court dismiss this case under Rule 12(b)(3) for improper venue over Valve.

---

[6] *See also Koss Corp. v. Skullcandy, Inc*., No. 6:20-cv-00664-ADA, 2021 WL 1226775, at *2-4 (W.D. Tex. Mar. 31, 2021); *Akurate Dynamics, LLC v. Carlisle Luid Tech., Inc*., No. 6:20-cv-00606-ADA, 2021 WL 860006, at *2 (W.D. Tex. Mar. 8, 2021); *Optic153 LLC v. ThorLabs, Inc*., No. 6:19-cv-0067-ADA, 2020 WL 3403076, at *3-4 (W.D. Tex. Jun. 19, 2020).

Dated: April 1, 2024                                      Respectfully submitted,

*/s/ Shaun W. Hassett, with permission by Kathleen R. Geyer*
Michael E. Jones (SBN: 10929400)
Shaun W. Hassett (SBN: 24074372)
Potter Minton
102 North College, Ste. 900
Tyler, Texas 75702
903-597-8311 (telephone)
mikejones@potterminton.com
shaunhassett@potterminton.com

Kathleen R. Geyer
Christopher P. Damitio
Dario A. Machleidt
Kilpatrick Townsend & Stockton
1420 Fifth Avenue Suite 3700
Seattle, WA 98101
Telephone: (206) 467-9600
Facsimile: (206) 623-6793
KGeyer@kilpatricktownsend.com
CDamitio@kilpatricktownsend.com
DMachleidt@kilpatricktownsend.com

*Attorneys for Defendant Valve Corp.*

## CERTIFICATE OF SERVICE

    I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on April 1, 2024.
    I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on April 1, 2024.

                                                     */s/ Shaun W. Hassett*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

    I certify that the foregoing document is authorized to be filed under seal pursuant to the Motion for Leave to File Under Seal filed concurrently.

                                                     */s/ Shaun W. Hassett*

78337050v.2